IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| MARY L. RODRIGUEZ, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § CIVIL ACTION NO. V-10-85 <br> MICHAEL J. ASTRUE, § <br> Commissioner, § <br> Social Security Administration, § <br> § <br> Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Mary L. Rodriguez' ("Plaintiff") Brief in Opposition of the Commissioner's Decision (Dkt. No. 16) and Defendant Michael J. Astrue's ("the Commissioner") Brief in Support of the Commissioner's Decision (Dkt. No. 18), which the Court will construe as Cross-Motions for Summary Judgment. Having considered the motions, response, record, and applicable law, the Court is of the opinion that the Commissioner's Motion should be **GRANTED** and Plaintiff's motion should be **DENIED**.

### Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Plaintiff's application for disability insurance benefits.

Plaintiff filed an application for Title II disability insurance benefits on January 17, 2006, alleging that she was disabled beginning that same date due to systemic lupus erythematosus (SLE), osteoarthritis of multiple joints and the lumbar spine, fibromyalgia, and obesity. (SS Admin. Tr. ("Tr."), Dkt. No. 24 at 51—58.) Her claims were denied by the Commissioner and again on reconsideration. (Tr. 35, 41.) Plaintiff had a *de novo* administrative hearing before an

1

Administrative Law Judge (ALJ) on October 9, 2008, at which a medical expert (ME) and a vocational expert (VE) testified. (Tr. 13, 20—30.) Plaintiff appeared at the hearing with her attorney and also testified. (*Id.*) At the time of the hearing, Plaintiff was 52 years old with an 11th grade education and had former work experience as a retail sales clerk, stock clerk, maid, and nurse's aide. (Tr. 18, 69.)

The ALJ issued a decision on October 29, 2008, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 13—19.) Plaintiff requested review of the ALJ's decision by the Social Security Administration's Appeals Council. (Tr. 7.) The Appeals Council denied Plaintiff's request on August 13, 2009, at which time the ALJ's determination became the final decision of the Commissioner. (Tr. 1—4.) Plaintiff filed this action on October 16, 2009, seeking review of the Commissioner's final decision. (Pl. Compl., Dkt. No. 1.)

## Standard

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court is to review the entire record, but it may not reweigh the

evidence, decide the issues de novo, or substitute the Court's judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343—44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the Commissioner should evaluate disability claims according to the following sequential five-step process:

(1) A claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are.

(2) A claimant will not be found to be disabled unless he has a "severe impairment."

(3) A claimant whose impairment meets or is equivalent to an impairment listed in an Appendix to the regulation will be considered disabled without the need to consider vocational factors.

(4) A claimant who is capable of performing work he has done in the past must be found "not disabled."

(5) If the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work. *See* 20 C.F.R. § 404.1520(b)—(f); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Social Security Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that there exists some other form of substantial gainful employment the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing the burden on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Analysis

Following Plaintiff's October 9, 2008 hearing, the ALJ evaluated Plaintiff's disability claim according to the aforementioned five-step process and issued the following Findings of Fact and Conclusions of Law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 17, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lupus, osteoarthritis of multiple joints and the lumbar spine, fibromyalgia, and obesity (20 CFR 404.1521 *et seq.*); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)).
. . .
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
. . .
5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional climbing of stairs and ramps, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes, and scaffolds.
. . .
6. The claimant is capable of performing past relevant work as a Retail Sales Clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
. . .
7. The claimant has not been under a disability, as defined in the Social Security Act, from January 17, 2006 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 15—18.)

Plaintiff now presents three grounds for reversal:

(1) The ALJ failed to apply the appropriate legal standard when determining Plaintiff's severe impairments.

5

(2)     The ALJ failed to apply the appropriate legal standard in rejecting the opinion of the medical expert.

(3)     The ALJ failed to apply the appropriate legal standard in finding that Plaintiff can return to her past work.

### A. Whether the ALJ failed to apply the appropriate legal standard when determining Plaintiff's severe impairments.

Plaintiff argues that the ALJ erred by failing to apply the appropriate legal standard in assessing her impairments at Step 2 of his evaluation, specifically with respect to Plaintiff's bilateral shoulder impingement.

Contrary to Plaintiff's assertion that "the ALJ did not cite *Stone* or another Fifth Circuit decision of like holding," the record shows that the ALJ explicitly cited *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), in his Step 2 analysis. (Tr. 15.) However, the Court agrees that the ALJ misstated the *Stone* standard in the "Applicable Law" section of his decision. The ALJ stated that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (Tr. 14.) However, the standard set forth in *Stone* provides that "'an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984)). As the District Court for the Northern District of Texas recognized in *Ruby v. Astrue*:

> The "minimal effect on an individual's ability to work" definition that the ALJ used in this case is not the standard set forth in *Stone*. In the Fifth Circuit, the

6

> appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*. . . .Unlike the standard that the ALJ applied, *Stone* provides no allowance for the minimal interference on a claimant's ability to work. Although this court has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard.

2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009).

However, the Court nonetheless finds that the ALJ's misstatement of the *Stone* standard does not require remand, since the record shows that the ALJ found that Plaintiff's shoulder impairments did interfere with her ability to work and adjusted her RFC[1] accordingly.

When Plaintiff applied for disability benefits, she alleged that pain in her shoulders due to fibromyalgia and osteoarthritis limited her ability to work. (Tr. 84, 96.) Although the words "bilateral shoulder impingement" were not specifically included in the ALJ's Step 2 findings, the ALJ did account for Plaintiff's shoulder pain by finding that her fibromyalgia and osteoarthritis of multiple joints were severe. (Tr. 15.) Moreover, despite failing to state at Step 2 that Plaintiff's bilateral shoulder impingement was severe, the ALJ explicitly stated that he was reducing Plaintiff's RFC to light work because of Plaintiff's shoulder pain due to bilateral impingement before proceeding to Step 4. (Tr. 17 ("[Dr. Petros'] impression . . . regarding the claimant's continued shoulder pain complaints was bilateral impingement." "A reduction to light [ ] takes the claimant's . . . shoulder pain complaints into account.").)

Because the ALJ did not summarily dispose of Plaintiff's claims at Step 2, but instead determined that Plaintiff had a combination of severe impairments and proceeded to Step 4 to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's RFC assessment and ultimate determination that Plaintiff could return to her

---

1. "Residual functional capacity" (RFC) refers to the greatest capacity of an individual to do work despite any limitations. 20 C.F.R. § 416.945(a)(1).

past relevant work. *See Chaparro v. Bowen*, 815 F.2d 1008 (5th Cir. 1987) ("[T]his case did not turn on whether or not [Plaintiff's] impairment was severe, but on whether [Plaintiff] could return to his past relevant work—an inquiry unaffected by the test set forth in *Stone*."); *Stone*, 752 F.2d at 1100 (summarily disposed of at step two); *Mays v. Bowen*, 837 F. 2d 1362, 1365 (5th Cir. 1988). ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found. In this case, the ALJ reached the fifth step in the process. As a result, we conclude that the ALJ implicitly found a severe impairment and find no error.")

Fifth Circuit case law establishes that "procedural perfection in administrative proceedings is not required. This Court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays*, 837 F. 2d at 1364. Because remanding this case to allow the ALJ to include the words "shoulder pain" or "bilateral shoulder impingement" in his Step 2 finding would still produce the same result, the Court finds that this issue does not require remand.

**B. Whether the ALJ failed to apply the appropriate legal standard in rejecting the opinion of the medical expert.**

Plaintiff next asserts that the ALJ failed to apply the appropriate legal standard when he rejected the opinion of Dr. Wesley Scott, the non-examining medical expert (ME) who testified at Plaintiff's disability hearing.

Despite Plaintiff's argument to the contrary, the record shows that the ALJ gave significant weight to the ME's opinion with respect to Plaintiff's lupus. The ME testified that tests were positive for lupus (Tr. 27), which ran contrary to the opinion of Plaintiff's treating physician, Dr. David Petros, that Plaintiff had "no clear signs of lupus," as well as a July 11,

8

2007 consultative examination report in which Plaintiff reported to Dr. Hector J. Ortiz that her lupus was stable. (Tr. 15, 152.) The ALJ ultimately found lupus qualified as a severe impairment at Step 2, showing significant consideration of the ME's opinion. (Tr. 15, 17.)

Plaintiff further complains that the ALJ did not give proper weight to Dr. Scott's opinion that Plaintiff's RFC should be limited to sedentary work due to her obesity. (Tr. 27—28.)

An ALJ must consider the following factors before declining to give any weight to the opinion of a treating specialist: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); 20 C.F.R. § 404.1527(d). SSA regulations also require the ALJ to consider these same six factors in evaluating the opinions of non-examining physicians like Dr. Scott. 20 C.F.R. § 404.1527(f).

Here, because the ME never examined or treated Plaintiff, factors one through three favor giving his opinion less weight than that of Plaintiff's treating physicians. With respect to the fourth and fifth factors, the ALJ explained, "The weight an ALJ gives to a medical expert's opinion depends upon the extent to which the opinion is supported by the medical signs and findings, and is consistent with the other evidence of record." (Tr. 17, n.1.) Although the ALJ did find that Plaintiff's obesity was severe at Step 2—which shows that he did not entirely discredit the ME's testimony—the ALJ nonetheless gave "greater credit to the bulk of the medical record and the opinion of the State agency medical consultant," ultimately concluding that "[t]he bulk of the record . . . supports a reduction of the claimant's occupational base but only to that of somewhat limited light work." (Tr. 17.)

9

Finally, the Court notes that the SSR Regulations explicitly provide that opinions regarding an individual's RFC assessment "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). However, even if the ME's opinion regarding Plaintiff's RFC were a proper medical opinion, the record shows that the ALJ considered the appropriate factors when determining the weight to give to that opinion.

Because the ALJ applied the appropriate legal standard in rejecting the ME's opinion regarding Plaintiff's RFC, the Court finds that this issue does not require remand.

### C. Whether the ALJ failed to apply the appropriate legal standard in finding that Plaintiff can return to her past work.

Finally, Plaintiff asserts that the ALJ failed to enter an adequately detailed finding about the demands of Plaintiff's past work at Step 4, but instead relied solely on the testimony of the vocational expert (VE), Dr. Terry Vander-Molen.

At Plaintiff's October 2008 disability hearing, the vocational expert (VE) testified that, according to the record, Plaintiff's past relevant work included positions as a "retail sales clerk" in convenience and department stores, which are rated light in physical demands. (Tr. 28—29.) The VE further testified that "in some of those jobs she also performed the duties of a stock clerk[,] and the stock clerk is rated medium physical demands." (Tr. 29.) When the ALJ asked the VE a hypothetical question including Plaintiff's RFC, the VE testified that such a hypothetical individual could perform the duties of a retail sales clerk. (*Id.*) Based on the VE and the *Dictionary of Occupations Titles* (*DOT*)—both of which are recognized under SSR 82-61 as acceptable sources to define a job as it is "ordinarily required" or usually performed in the

national economy—the ALJ concluded that Plaintiff was able to perform her past relevant work as a retail sales clerk as "it is generally performed in the national economy." (Tr. 18.)

Plaintiff claims that although her self reported work history report distinguishes between "clerk" and "stock clerk" (Tr. 69), the VE should have classified her previous "clerk" position at a convenience store as a "stock clerk" and not a "retail sales clerk" because, in addition to recording gas pump meter readings, waiting on customers, and using the cash register, "she was also responsible for stocking the shelves [and] putting cartons of soda and beer into the walk[-]in cooler." (Tr. 71.) Because the position of "stock clerk" is considered medium work, Plaintiff claims she is precluded from all past relevant work.[2]

According to the *DOT*, the retail sales clerk job is light in exertion, despite the fact that the job also includes stocking shelves as it is ordinarily required or usually performed in the national economy. *DOT Occupational Code* 290.477-014. Even if stocking shelves was not ordinarily required under the retail sales clerk position, however, but was required by Plaintiff's former employer at the convenience store, the SSR Regulations specifically provide:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61.

---

[2]. Plaintiff also claims the VE erred in finding that her previous "clerk" job at a dollar store was a retail sales clerk job and not a stock clerk job because "she described her clerk job at a retail dollar store as requiring constant pulling of merchandise. She operated the cash register only when needed but spent most of the day stocking store shelves." (Dkt. No. 16 at 14 (citing Tr. 70).) Even assuming that Plaintiff is correct, because the Court finds that the VE did not err in classifying her convenience store position as a retail sales clerk, Plaintiff's argument does not affect the Court's decision on this issue.

Because the ALJ applied the correct legal standard in determining that Plaintiff was not disabled because she could perform her past relevant work as a retail sales clerk in a convenience store as it is generally performed in the national economy, the Court finds that this issue does not require remand.

## Conclusion

For the reasons stated above, the Commissioner's Motion for Summary Judgment (Dkt. No. 18) is **GRANTED**, Plaintiff's Motion for Summary Judgment (Dkt. No. 16) is **DENIED**, and the decision of the ALJ is **AFFIRMED**.

It is so **ORDERED**.

**SIGNED** this 24th day of January, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE